Pedro **FERRERAS**, Petitioner

v.

U.S. Attorney General John **ASHCROFT**, Commissioner of Immigration and Naturalization Services, Respondents.

No. 00CIV.7183(LTS)(KNF).

United States District Court,
S.D. New York.

Aug. 2, 2001.

620

Law Offices of Ismael Gonzalez, By Ismael Gonzalez, Esq., Tina Kansas, Esq., New York City, for Petitioner.

Office of the United States Attorney, By Krishna Patel, Esq., Assistant United States Attorney, New York City, for Respondent.

## OPINION AND ORDER

SWAIN, District Judge.

Pedro Ferreras ("Ferreras" or "Petitioner"), a legal permanent resident of the United States who is currently in the custody of the Immigration and Naturalization Service ("INS"), petitions this Court for a writ of habeas corpus, seeking re-

lease pending a final order of deportation. On April 23, 2000, as Ferreras attempted to reenter the country following a brief trip abroad, he was detained as inadmissible by the INS on the basis of a December 1993 conviction of sexual abuse of a minor. He has remained in INS custody since that time.

In his petition for a writ of habeas corpus, Ferreras asserts that he is being detained pursuant to Section 236(c) of the Immigration and Nationality Act of 1952, as amended ("INA" or the "Act"), codified at 8 U.S.C. § 1226(c), which generally mandates the detention of an alien who has been convicted of a crime involving moral turpitude. He argues that such detention is wrongful because the statute is unconstitutional on its face and as applied to him. He further asserts that if, as the Government contends, a different provision of the INA (Section 235(b), codified at 8 U.S.C. § 1225(b)) is found to govern his detention, that section, too, is unconstitutional. Finally, he posits that the procedures used to review his eligibility for temporary release violated his constitutional due process rights. Ferreras seeks immediate release, court ordered release on bail, or a hearing before an "independent decision-maker" to determine whether he should be released pending conclusion of his deportation proceedings.

This Court has jurisdiction under 28 U.S.C. § 2241 to consider Ferreras' petition for habeas corpus and thus to determine whether Ferreras's continued custody violates the Constitution or laws of the United States. *See* 28 U.S.C.A. § 2241 (West 1994 & Supp.2000); *see also INS v. St. Cyr,* —— U.S. ——, ——, 121 S.Ct. 2271, 2287, 150 L.Ed.2d 347 (2001); *Calcano–Martinez v. INS,* —— U.S. ——, ——, 121 S.Ct. 2268, 2270, 150 L.Ed.2d 392 (2001); *Jean–Baptiste v. Reno,* 144 F.3d 212, 220 (2d Cir.1998), *reh'g denied,* 175

F.3d 226 (2d Cir.1999); *Henderson v. INS,* 157 F.3d 106, 122 (2d Cir.1998). Venue in this District is proper in that Petitioner is currently detained in this district, is a resident of New York, and the conviction on which his removal proceeding is based arose from events that occurred in the Southern District of New York. *See* 28 U.S.C.A. § 1391 (West 1993).

On February 5, 2001, following extensive briefing and oral arguments and after thorough consideration of the parties' submissions, the Court denied, for reasons stated at length on the record, Ferreras's request for immediate release pending the Court's final determination of the issues raised in Ferreras' petition. The Court now finds, for the reasons that follow, that the INS has acted in a manner consistent with the pertinent statutory provisions and that neither the statutory regime nor the procedures applied in Ferreras' case violated his constitutional rights. Accordingly, Ferreras' petition for a writ of habeas corpus is denied in all respects.

## BACKGROUND

Ferreras, a 57 year old native of the Dominican Republic, was admitted to the United States as a legal permanent resident in 1979. Since that time, Ferreras has resided in Bronx County, New York, where his mother, a naturalized citizen, and his wife, brothers and sisters, all legal permanent residents, also currently reside. On November 1, 1993, Ferreras was arrested and charged with sexually abusing his then girlfriend's 13 year old niece. He pled guilty to sexual abuse in the 1st degree on December 7, 1993, and was sentenced to five years probation, which he served without incident. The INS was notified of Ferreras's conviction, at the latest, by January of 1994. Ferreras has not been convicted of any other crimes.

In 1994 and 1995, while he was on probation, Ferreras made vacation visits to the Dominican Republic and returned to the United States. On April 23, 2000, upon his return from a third visit to the Dominican Republic, Ferreras was detained by the INS. He was first detained in New York City and was then transferred for a brief period to a detention facility in York, Pennsylvania, after which he requested and was granted return to a New York City facility. On August 16, 2000, an Immigration Judge ordered Ferreras removed from the United States on the basis of his 1993 conviction. The Immigration Judge also denied Ferreras's application for cancellation of removal and for a waiver of deportation. Ferreras appealed the decision of the Immigration Judge to the BIA and, on February 28, 2001, received notice that he would be granted a hearing before an Immigration Judge to apply for relief from removal. Since his detention began, Ferreras has made two unsuccessful applications to the INS for release, one to an INS District Director and one to an Immigration Judge.

Ferreras does not contest the propriety of his initial detention based on his 1993 conviction. The controversy before the Court is focused on which statute and corresponding regulatory provisions govern his continued detention, the constitutionality of the relevant statute or statutes, and whether Petitioner's due process rights have been violated by the procedures used to continue his detention.

## DISCUSSION

*Statute Governing Petitioner's Detention*

■ In his petition and extensive subsequent submissions, Ferreras argues that, notwithstanding the INS' representations to the contrary, the INS is detaining him pursuant to Section 236(c) of the INA, which is codified at 8 U.S.C. § 1226(c). *See* 8 U.S.C.A. § 1226(c) (West 1999). Asserting that the statute is unconstitutional, he argues that he is entitled to immediate release or a judicial hearing on the issue of release.

Under Section 236(c), an alien is subject to detention, pending a removal[1] decision, by reason of having been convicted of any of certain specified offenses or having engaged in statutorily proscribed activity. *See generally* 8 U.S.C.A. § 1226. The offenses for which an alien can be removed from the United States include crimes of moral turpitude. The statute mandates that the Attorney General "take into custody" any alien who is "inadmissible" or "deportable" by reason of conviction of such an offense "when the alien is released [from imprisonment], without regard to whether the alien is released on parole, supervised release, or probation ...." 8 U.S.C.A. § 1226(c). It is undisputed that, were the statute applicable, Ferreras would not come within any of the statutorily-enumerated exceptions to its detention mandate. Ferreras asserts that the mandatory detention aspect of the statute is unconstitutional on its face and as applied to him.

The Court need not reach this aspect of Ferreras' constitutional argument, however, because it is clear that he is not being detained pursuant to Section 236(c). Rather, the Government has consistently taken the position that Ferreras' detention is pursuant to Section 235(b) of the Act, which provides that an alien who is an

---

1. Prior law concepts of "exclusion" and "deportation" are subsumed in the INA's provisions for "removal" proceedings. 8 U.S.C.A. § 1229a (West 1999 & Supp.2001); *see Patel v. McElroy,* 143 F.3d 56, 61 (2d Cir.1998) (noting the consolidation of exclusion and deportation proceedings into one "removal" proceeding).

"applicant for admission ... shall be detained" for a removal proceeding if an immigration officer determines that such alien is not "clearly and beyond a doubt entitled to be admitted." 8 U.S.C.A. § 1225(b)(2)(A) (West 1999).[2] Under current law, a legal permanent resident returning to the United States is considered an "applicant for admission" if, *inter alia,* the person has previously committed a crime involving moral turpitude. 8 U.S.C.A. § 1101(a)(13)(C) (West 1999 & Supp.2000); 8 U.S.C.A. § 1182(a)(2)(A)(1) (West 1999 & Supp.2000). Petitioner does not dispute that his detention is predicated upon his 1993 conviction, nor does he dispute the INS's categorization of the crime as one involving moral turpitude.[3]

 Ferreras argues that Section 235(b) is inapplicable to him because he is a legal permanent resident and therefore is not an "applicant for admission." This argument is unavailing. The INA specifically defines the term "applicant for admission" to include a legal permanent resident who has been convicted of a crime involving moral turpitude and is seeking to reenter the United States, and the INS has accordingly identified Petitioner as such. *See* 8 U.S.C.A. § 1101(a)(13)(C); 8 U.S.C.A. § 1182(a)(2)(A)(i)(I); 8 U.S.C.A. § 1225(b)(2)(A); Pet'r Supp. Aff. Relating to Bond Proceedings ("Pet'r Supp. Aff.") at ¶ 2 and Ex. B (letter of May 8, 2000 to counsel for Ferreras, Ismael Gonzalez, Esq., from Acting District Director in Philadelphia, M. Frances Holmes); *see also Matter of Collado–Munoz,* Int. Dec. 3333,

1997 WL 805604 (BIA 1997) (*"Collado"*). In reviewing an agency determination, federal courts must accord substantial deference to an agency's interpretation of the statutes it is charged with administering. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Sutherland v. Reno,* 228 F.3d 171, 173–74 (2d Cir.2000). "[T]he BIA is entitled to deference when interpreting ... provisions of the Immigration and Nationality Act, as long as those interpretations are reasonable." *Michel v. Immigration and Naturalization Service,* 206 F.3d 253, 260 (2d Cir.2000). Ferreras' arguments regarding the constitutionality of Section 236(c) of the INA are thus beside the point.

Ferreras further argues that this Court should deem Section 236(c) the governing statute because the INS's handling of his case appears to him inconsistent with the provisions of INA Section 235(b)(1). He asserts, in addition, that Section 236(c) provided a predicate for his detention immediately upon his release from custody under his prior conviction and thus should be considered the governing statute. These arguments, too, are unavailing.

The INS has invoked Section 235(b)(2) (providing for a deportation hearing process for those arriving aliens detained as "not clearly and beyond a doubt entitled to be admitted"), rather than Section 235(b)(1) (providing for immediate deportation of aliens determined by the immigration officer to be inadmissible) as the

**2.** The District Director's letter denying Petitioner's request for parole pending completion of the removal proceedings cited Section 235(b) as the relevant statute and made findings consistent with the provisions of that statute and a related regulation, *see* 8 C.F.R. § 212.5(b) (2001), in determining that release of Petitioner was not warranted. In the course of the instant litigation the INS has

consistently taken the position that Petitioner is being detained pursuant to Section 235(b).

**3.** Documents submitted by the Government confirm that the INS based Ferreras's detention on his prior conviction of a crime involving moral turpitude. *See* Gov't Return at ¶ 5, Ex. A.

basis for Ferreras' detention. The INS's commencement of a removal hearing process (as opposed to summary deportation) in Ferreras' case is thus consistent with its contention that it is acting pursuant to Section 235(b) rather than Section 236(c).

Whether or not the INS could have detained Ferreras pursuant to Section 236(c) and commenced removal proceedings immediately upon his release from state incarceration, nothing in the statutory scheme requires the INS to apply its provisions now. Nor is the INS's delay in taking action based upon the 1993 conviction constitutionally significant in this context. The Court also declines Ferreras's invitation to "hold the government to its own words," which Petitioner indicates are found in a 1998 INS directive to INS regional directors providing that INS officials "must" take into custody criminal aliens "upon their release from criminal incarceration or custody." (Pet'r's Mem. of Law in Supp. of Writ of Habeas Corpus ("Pet'r's Mem.") at 18–19.) Whether the INS followed through on its directive in Petitioner's case is not a constitutional matter generally, nor is it determinative of the statutory provision governing Petitioner's detention.

The Court therefore declines to entertain Ferreras' constitutional challenge to Section 236(c) of the Act and will analyze the remainder of Ferreras' arguments in the context of Section 235(b) of the INA and the Act's related provisions for release on "parole" of aliens detained in connection with removal proceedings.

*Constitutionality of Statutory Detention Provisions*

■ Aliens detained pursuant to Section 235(b) may be released from custody pending a final order of deportation only in accordance with Section 212(d)(5)(A) of the statute ("Section 212"), which provides in pertinent part that

The Attorney General may ... in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C.A. § 1182(d)(5)(A) (West 1999 & Supp.2001). By regulation, the Attorney General has delegated this authority to District Directors and other specified INS officials. 8 C.F.R. § 212.5 (2001).

Petitioner argues that the parole provision is unconstitutional on its face because the circumstances under which a detainee can be released are so narrow as to constitute a requirement of mandatory detention, in that very few aliens can show that release is justified for "urgent humanitarian reasons or significant public benefit." 8 U.S.C.A. § 1182(d)(5)(A). Ferreras argues that Congress' intention was to effect a "regime of mandatory detention." (Reply Mem. of Law in Resp. to Gov't's Mem. of Law in Opp'n to Pet'r's Pet. for Writ of Habeas Corpus ("Reply Mem.") at 7.) Underlying this regime, he argues, is an assumption that all aliens facing deportation on the basis of criminal convictions are risks for flight and/or violence. Petitioner also asserts that, because he is the victim of that assumption and has thus been denied a right of personal liberty to which all legal permanent residents are entitled, the

statute is unconstitutional as applied to him.

The statute clearly limits to a narrow class of circumstances the availability of parole pending removal proceedings. Ferreras' argument that it reflects insidious class-based assumptions as to the likely future behavior of previously convicted aliens is, however, inconsistent with the scope of the statute. With limited exceptions, the statute applies to all detained aliens applying for admission to the United States. Aliens with prior criminal convictions are but one subset of that group.

 Ferreras' constitutional challenge to the applicable restrictions on release also fail. Legal permanent resident aliens, who have been admitted to the United States, enjoy rights under the Constitution, including the right to due process of law in connection with deprivations of life, liberty or property. *See Zadvydas v. Davis,* —— U.S. ——, —— – ——, 121 S.Ct. 2491, 2500–01, 150 L.Ed.2d 653 (2001). The Second Circuit has, further, recognized that "aliens ... have a substantive due process right to be free of arbitrary confinement pending deportation proceedings." *Doherty v. Thornburgh,* 943 F.2d 204 (2d Cir.1991), *cert. dismissed sub nom. Doherty v. Barr,* 503 U.S. 901, 112 S.Ct. 1254, 117 L.Ed.2d 485 (1992). That right to liberty from confinement, however, is not absolute. The Constitution grants Congress plenary control over immigration matters. Congress thus has the power to alter the rights of resident aliens to remain in the United States. *St. Cyr,* —— U.S. at ——, n. 55, 121 S.Ct. at 2293, n. 55. It has the power to remove them from the United States, to detain them for a reasonable period pending such removal,

and to subject them to supervision with conditions when they are released from detention. *Zadvydas,* —— U.S. at ——, 121 S.Ct. at 2501; *see also Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977) ("[O]ver no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens" (internal citations and quotation marks omitted)); *Galvan v. Press,* 347 U.S. 522, 531, 74 S.Ct. 737, 98 L.Ed. 911 (1954) (the principle that "the formulation of these policies [concerning the entry of aliens and their right to remain here] is entrusted exclusively to Congress has become about as firmly imbedded in the legislative and judicial tissues of our body politic as any aspect of our government."); *Fong Yue Ting v. United States,* 149 U.S. 698, 711, 13 S.Ct. 1016, 37 L.Ed. 905 (1893) (the "right to exclude or to expel all aliens, or any class of aliens, absolutely or upon certain conditions, in war or in peace, [is] an inherent and inalienable right of every sovereign and independent nation, essential to its safety, its independence, and its welfare ...."). Furthermore, Supreme Court authority establishes that there is no constitutional right to bail, such that Congress has the power to deny bail entirely without violating any constitutional rights, including in deportation cases. *Carlson v. Landon,* 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952); *see also United States v. Kostadinov,* 721 F.2d 411, 413 (2d Cir.1983); *Leader v. Blackman,* 744 F.Supp. 500, 509 (S.D.N.Y. 1990).

Although the constitutionality of alien detention and parole determinations pursuant to the INA has been litigated in a number of contexts,[4] Ferreras has not

---

4. *See, e.g., St. John v. McElroy,* 917 F.Supp. 243 (S.D.N.Y.1996) (finding predecessor statute unconstitutional as applied to returning resident aliens and determining that parole

hearing conducted by INS did not provide due process because it failed to give petitioner individualized consideration); *Garcia v. United States,* No. 96 Civ. 4061, 1996 WL 412018

brought to the Court's attention any authorities holding unconstitutional Section 212's limitations on eligibility for parole release and the Court has not found any such authorities. The cases Petitioner relies upon do not provide support for his argument that the detention requirement of Sections 235(b) and limited parole provisions of Section 212 are unconstitutional either on their face or as applied to Petitioner. In *Kellman v. District Director, I.N.S.,* 750 F.Supp. 625 (S.D.N.Y.1990), the court found that detention pursuant to a predecessor statute to Section 236(c) violated aliens' right to due process on the grounds that: 1) it did not contain "built-in limitations or guarantees" for a prompt detention hearing; 2) it failed to allow for an individualized bail determination; and 3) the INS had not provided the petitioner in that case with a sufficient opportunity to challenge his detention pending the outcome of his deportation proceedings. Here, by contrast, Petitioner has been afforded an opportunity to be heard, pursuant to a statute providing for case-by-case determinations of parole eligibility. *See* 8 U.S.C.A. § 1182(d)(5)(A). Ferreras had, and took advantage of, the opportunity to make extensive submissions in support of his application for parole, and the District Director's decision reflects consideration of the issues raised in the application. *Kellman* is thus inapposite.[5]

The Supreme Court's most recent decision addressing the detention of aliens in connection with deportation proceedings recognizes implicitly the constitutionality of detention while such proceedings are active. While the Court in *Zadvydas v. Davis* perceived a "serious" constitutional question "as to whether, irrespective of the procedures used ..., the Constitution permits detention that is indefinite and potentially permanent,"[6] the Court found itself able to avoid this constitutional issue by construing a post-deportation order detention provision of the INA as not authorizing detention for more than a period reasonably necessary to secure removal pursuant to the final deportation order. *Zadvydas,* —— U.S. at ——, ——, 121 S.Ct. at 2502, 2504. The Court's decision, upholding as consistent with congressional immigration authority detention through removal proceedings and until "removal is no longer reasonably foreseeable," *id.* at 2503, necessarily assumes the permissibility of such detention. The Second Circuit, too, has recently reaffirmed Congress' constitutional authority over immigration matters, including detention in connection therewith: "[U]nder the Constitution, Congress and the Executive Branch *may* exercise uniquely broad authority over immigration matters ... [I]t may be that, in some cases, detention without bail is a necessary feature of our deportation procedures ..., [but] the burden lies on the political branches explicitly to instantiate

(S.D.N.Y. July 22, 1996) (finding due process satisfied where District Director, under predecessor statute, denied application for release pending determination of deportability on the alternative grounds that petitioner was ineligible for parole as an aggravated felon and that petitioner was not entitled to parole as a matter of discretion, after reviewing evidence submitted in support of the application for release).

**5.** Petitioner cites to other cases in support of his conclusion that "mandatory detention" is

unconstitutional; these authorities are unpersuasive here for similar reasons. *See, e.g., Leader v. Blackman,* 744 F.Supp. 500, 509 (S.D.N.Y.1990) (analyzing predecessor statute to Section 236(c) and finding it unconstitutional where alien was denied any opportunity to be considered for release on bail pending a decision of his deportability).

**6.** *Zadvydas,* —— U.S. at ——, 121 S.Ct. at 2502.

such a system of detention and to do so through the law." *Mapp v. Reno,* 241 F.3d 221, 227 (2d Cir.2001) (emphasis in original).

The detention that Petitioner challenges is the product of just such an explicit exercise of congressional authority. In limiting the availability of parole to a narrow set of factual circumstances, Congress acted within the scope of the political power granted to it by the Constitution. This statutory scheme, presuming detention in connection with ongoing deportation proceedings while permitting parole under specified circumstances, does not impose arbitrary or capricious constraints on the liberty of detained aliens and thus does not on its face violate the constitutional rights of those aliens.

■■■ Nor has Petitioner demonstrated that the limited statutory provision for parole, as applied to him, is an unconstitutional constraint of his liberty. Petitioner argues that the District Director's denial of his parole application was merely the product a "regime of mandatory detention." (Reply Mem. at 7.) The record in this matter shows, however, that the Acting District Director considered the information presented to her and exercised discretion in determining that Ferreras's release was not in the public interest. "[A]s long as the Attorney General exercises his broad discretion under 8 U.S.C. § 1182(d)(5) to determine whether unadmitted aliens may be paroled pending final determination of their applications for admission to the United States, his decision may not be challenged on the grounds that the discretion was not exercised fairly in the view of a reviewing court or that it gave too much weight to certain factors relevant to the risk of abscondence and too little to others." *Bertrand v. Sava,* 684 F.2d 204, 212 (2d Cir. 1982). Additionally, "[t]he burden of proving that discretion was not exercised or was exercised irrationally or in bad faith is a heavy one and rests at all times on the unadmitted alien challenging denial of parole." *Id.* at 212–13; *see also Mapp v. Reno,* 241 F.3d at 229, n. 12 ("while it may be the case that had the INS exercised its discretion ... and decided not [to] release [petitioner] on bail, [the court] would be required to defer to its decision, where there has been no such [exercise of discretion], deference to the INS ... is not warranted"). Here, Petitioner has proven neither that the District Director failed to exercise discretion nor that discretion was exercised in an irrational manner or in bad faith. Thus, the statute is not unconstitutional as applied to Petitioner.

*Due Process*

■■■ Petitioner further argues that, even if the statutory construct is constitutional, he was denied due process in the review of his requests for release because his detention status was adjudicated by an officer of the INS, on paper submissions alone, rather than after an in-person testimonial hearing before an independent adjudicator. The Court finds that the procedures employed by the INS in Ferreras' case pass constitutional muster under the standards established by the Supreme Court.

Prior to filing the instant petition, Ferreras made two applications, both filed within the first week of his detention, seeking release from the INS. On April 25, 2000, Ferreras' attorney directed a letter to the INS District Director in Philadelphia, seeking his client's release on parole, which was denied on May 8, 2000. (Pet'r Supp. Aff. at ¶ 2, and Ex. B.) On April 27, 2000, Petitioner's counsel filed with the Immigration Court in York, Pennsylvania an "Application for Parole." (Pet'r Supp.

Aff. at ¶¶ 2, 3, and Ex. C.). The Immigration Judge in York denied that request for parole on May 22, 2000. (Pet'r Supp. Aff. at ¶ 3 and Ex. D.)

There is no indication that the INS imposed any limitations on Ferreras with respect to the nature or number of written submissions he could make in support of his application. The Acting District Director's written decision, dated May 8, 2000, offered several reasons for denial of the request, including that Ferreras had not demonstrated that he met the criteria for release under the applicable law and that there was no significant public benefit to warrant his release. The letter of determination, addressed to Petitioner's attorney, read in part:

As an alien under removal proceedings, section 235(b) of the INA requires that Mr. Ferreras be held in detention throughout the completion of his hearings before the immigration court, as well as until he is removed from the United States, if ordered. Aliens in removal proceedings are not eligible to be released on bond. Release of aliens in removal proceedings from detention is within the sole discretion of the District Director under 8 C.F.R. § 212.5(a). In order to be considered for parole under this regulation, Mr. Ferreras must present concerns that justify release on the basis of emergent circumstances, such as a serious medical emergency or that [his] release would be strictly in the public interest. Furthermore, in order to be released from detention on parole, the facts and circumstances regarding his case must demonstrate that he presents neither a security risk nor a risk of absconding.

Moreover, I find that even assuming Mr. Ferreras met the threshold burden concerning risk of flight, he, nonetheless, would remain detained inasmuch as he does not fall within any of the categories to be considered for parole enumerated in 8 C.F.R. § 212.5(a). Because of the circumstances of his arrival, 8 C.F.R. § 212.5(a) is the only regulation under which he may be considered for parole. There is no information or argument in your letter upon which I could conclude that his continued detention is not in the public interest.

The rule of law is mandatory detention. The exception is parole. The factors which you cite in your letter, the immediate family in the United States, his length of time residing in the United States and the assertion that his conviction for Sexual Abuse in the first degree was not particularly a serious crime, are simply insufficient to support the exception over the rule.

In conclusion, you have failed to demonstrate that there are urgent humanitarian reasons or significant public benefit as contemplated by 8 C.F.R. § 212.5(a) that would warrant his release from custody. Accordingly, your request for parole is denied.

(Pet'r Supp. Aff. at Ex. B.) As the letter reveals, the Acting District Director considered the arguments proffered by Ferreras and found them insufficient to justify release.

The Immigration Judge's May 22, 2000, order denying Petitioner's Application for Parole noted, without more, that Ferreras " 'shall' be considered an arriving alien under the BIA's interpretation in *Matter of Collado*, Int. Dec. 3333 (BIA 1997) of INA § 101(a)(13)(C)." (Aff. in Supp. of Writ of Habeas Corpus, Ex. B; Pet'r Supp. Aff. at ¶ 3 and Ex. D.) That section, codified at 8 U.S.C. § 1101(a)(13)(C), is the definitional provision of the INA under which Petitioner is categorized as an alien seeking admission because of his criminal conviction. It can be inferred from this

reference that the Immigration Judge concluded that he had no authority to review the request for release because, under *Collado*, an "arriving" alien in Ferreras' position is ineligible for release under the bond provisions over which INS regulations give Immigration Judges jurisdiction. Rather, such an alien must apply for parole pursuant to the above described provisions of INA Sections 212 and 235. The Attorney General has not delegated his authority under those provisions to the Immigration Judges. *See* 8 C.F.R. § 212.5.

The Acting District Director's determination of Ferreras' written parole application thus constitutes the only substantive consideration that has been afforded Ferreras' efforts to obtain release. Ferreras contends that, under the Due Process clause of the Fifth Amendment to the Constitution, he has a right to adjudication of his application by an "independent adjudicator" (*i.e.*, by an Immigration Judge rather than by a person charged with executive functions of the agency).

*Petitioner's Due Process Rights*

 It is well settled that resident aliens enjoy the same constitutional rights to due process protection as do U.S. citizens. *See Plyler v. Doe*, 457 U.S. 202, 210, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982); *Yick Wo v. Hopkins*, 118 U.S. 356, 369, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). Notwithstanding his technical "arriving alien" status under immigration law, Ferreras retains the constitutional due process rights to which he was entitled as a legal permanent resident. His departure for a brief trip to the Dominican Republic did not constitute an intentional abandonment of his legal permanent resident status. Indeed, even aliens who have not achieved legal permanent resident status have been held entitled to protection under the Fifth Amendment's Due Process clause. "[T]he Due Process Clause applies to all 'persons'

within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, —— U.S. at ——, 121 S.Ct. at 2500.

 This Court must therefore determine whether the procedures used in Ferreras' case were consistent with the requirements of the Due Process clause. The Supreme Court has held that due process forbids the state from "arbitrarily . . . caus[ing] an alien who has entered the country, . . . although alleged to be illegally here, to be taken into custody and deported without giving him all opportunity to be heard upon the questions involving his right to be and remain in the United States." *Yamataya v. Fisher*, 189 U.S. 86, 101, 23 S.Ct. 611, 47 L.Ed. 721 (1903). An alien must be provided with notice of charges, a hearing before an executive or administrative tribunal, and a fair opportunity to be heard, prior to deportation. *See Kwong Hai Chew v. Colding*, 344 U.S. 590, 597–98, 73 S.Ct. 472, 97 L.Ed. 576 (1953). The Supreme Court has not as yet, however, addressed directly the particulars of procedural due process in connection with detention pending removal proceedings.

 Supreme Court decisions have "repeatedly emphasized that over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens." *Fiallo*, 430 U.S. at 792, 97 S.Ct. 1473 (internal quotation marks and citations omitted). Here, Congress has limited the opportunities for release of "arriving" aliens such as Ferreras to parole application proceedings, and has granted the Attorney General discretionary authority to make case-by-case determinations of parole eligibility within the statutory parameters. 8 U.S.C. § 1182(d)(5)(A). By regulation, the Attorney General has delegated this discretionary parole authority to the District Directors and other INS officials. 8 C.F.R.

§ 212.5. It is a firmly established principle "that administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." *FCC v. Schreiber,* 381 U.S. 279, 290, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965) (citation and internal quotation marks omitted). "[I]n providing for judicial review of administrative procedural rule-making, Congress has not empowered district courts to substitute their judgment for that of the agency," and has instead "limited judicial responsibility to insuring consistency with governing statutes and the demands of the Constitution." *Id.* This Court cannot override the procedural mechanisms established by Congress and the INS without a finding that such procedures are unconstitutional.

 The constitutional sufficiency of procedures varies with the circumstances of each individual case. *See Landon v. Plasencia,* 459 U.S. 21, 33, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982). The standard for determining the sufficiency of process afforded prior to the deprivation of a constitutionally-protected interest is set forth in *Mathews v. Eldridge.* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The *Mathews* test requires the Court to balance: i) the private interest that the government action affects; ii) the risk that the procedures used will result in erroneous deprivation of that interest and the extent to which that risk could be minimized by additional safeguards; and iii) the government's interest in maintaining current procedures.

*Adjudication upon Written Submission*

 The procedure challenged here consists of the opportunity to make a written petition for parole, through an attorney, to the INS District Director. Although there was no evidentiary hearing and no opportunity for oral argument to the District Director, there appear to have been no limitations on the nature or quantity of materials that could be included in the submission. The District Director reviewed Ferreras' submission and made a written determination based thereon in accordance with Section 212. There is no indication that the District Director rejected any of Petitioner's factual proffers, although the determination does draw ultimate conclusions different from those for which Petitioner argued.

The private interest affected here is Ferreras's liberty, which is of undisputed importance but subject, as noted above, to constraints imposed by Congress pursuant to its constitutional authority over immigration matters. Petitioner has not demonstrated any substantial risk that the procedures here employed would result in an erroneous deprivation of that interest. The governing statute and regulations identify the criteria relevant to detention determinations; the District Director's written determination reflects consideration both of those criteria and of Petitioner's proffers. Furthermore, Petitioner has not shown how additional safeguards would minimize any risk of erroneous deprivation of liberty. He does not explain what arguments he could have made in an evidentiary hearing that he was not able to make on paper, nor has he identified any credibility determinations relevant to the decision made in his case.

Neither party here has addressed the third factor—the Government's interest in maintaining the current procedures—at any length. It can be assumed, however, that the INS's interest in maintaining current procedures primarily goes to resource allocation and the uniform administration of release determinations. The INS currently conducts full testimonial hearings as part of its deportation proceedings. Were

the same required for each bail application, it is predictable that the expenditure of INS resources on such hearings would at a minimum double, assuming that every person who asks for a deportation hearing would also ask for a hearing on at least one bail application.

 Supreme Court precedent establishes, furthermore, that the opportunity to be heard with respect to the deprivation of a constitutionally protected interest does not always mean that a live testimonial hearing is required. In *Kwong Hai Chew v. Colding,* 344 U.S. 590, 73 S.Ct. 472, 97 L.Ed. 576 (1953), the Supreme Court addressed what process was owed to the petitioner in that case, a Chinese seaman who had been a legal permanent resident for about three years before being denied entry to the United States upon his return from a voyage abroad which was taken connection with in his employment. The Court found that he had a right to be heard prior to deportation: "Although Congress may prescribe conditions for his expulsion and deportation, not even Congress may expel him without allowing him a fair opportunity to be heard." *Id.* at 597, 73 S.Ct. 472. The Court further discussed what might satisfy the hearing requirement, noting that "[o]ne of the principles [inherent in due process] is that no person shall be deprived of ... liberty without opportunity, at some time, to be heard, before [administrative officers executing the provisions of a statute involving the liberty of persons], in respect of the matters upon which that liberty depends—not necessarily an opportunity upon a regular, set occasion, and according to the forms of judicial procedure, but one that will secure the prompt, vigorous action contemplated by Congress, and at the same time be appropriate to the nature of the case upon which such officers are required to act." *Id.* at 478, n. 6.

Under the circumstances of this case, the Constitution does not compel that Ferreras be afforded an in-person, evidentiary hearing upon his application for temporary release. As the Supreme Court noted in *Mathews v. Eldridge,* "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." 424 U.S. at 333, 96 S.Ct. 893 (internal quotation marks omitted).

The "opportunity to be heard" does not necessarily require an in-person, evidentiary hearing. Here, the INS regulations set forth clearly the criteria applicable to parole determinations. Ferreras was afforded an unfettered opportunity to present a written application and did so. His arguments were presented by counsel; thus any due process concern that might stem from the inability of a lay person to present effective legal arguments is absent here. *Cf. Mathews v. Eldridge,* 424 U.S. at 345, 96 S.Ct. 893. The submission was considered and its factual premises accepted. The requisite notice and opportunity were afforded by the procedure. The District Director's determination reflects individualized consideration of Ferreras' application and was not arbitrary. The procedure thus comported with the requirements of due process and no constitutional infirmity compels the conduct of a live evidentiary hearing.

*The Adjudicator*

 Petitioner further contends that his due process rights were violated because his parole application was reviewed by the District Director rather than by an Immigration Judge. Courts must begin by presuming that an administrative agency will act properly and according to law. *FCC v. Schreiber,* 381 U.S. at 296, 85 S.Ct. 1459. The statute and regulations provide for review of parole applications by the District Director.

The Court finds that Petitioner has failed to establish that his rights were violated in this respect.

The adjudication of deportation-related issues by agency personnel is a long-standing practice and is one that has withstood Constitutional challenges. In *Marcello v. Bonds,* 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107 (1955), the Supreme Court rejected the contention that a deportation hearing was neither fair nor impartial because the special inquiry officer was subject to the supervision and control of the INS:

> The contention is without substance when considered against the long-standing practice in deportation proceedings, judicially approved in numerous decisions in the federal courts, and against the special considerations applicable to deportation which the Congress may take into account in exercising its particularly broad discretion in immigration matters.

*Id.* at 311, 75 S.Ct. 757. In *Withrow v. Larkin,* 421 U.S. 35, 56, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), the Supreme Court likewise noted that it is "typical for the members of administrative agencies to receive the results of investigations, to approve the filing of charges or formal complaints instituting enforcement proceedings, and then to participate in the ensuing hearings." As the Fifth Circuit noted in *United States v. Benitez–Villafuerte,* 186 F.3d 651, 660 (5th Cir.1999), "the Supreme Court's precedent on this point is clear: we will not presume bias from the mere institutional structure of the INS." [7]

The INA commits detention and parole release determinations to the discretion of the Attorney General. 8 U.S.C. § 1182(d)(5). Ferreras argues, without pointing to specific evidence, that an INS hearing officer is an inherently biased adjudicator. This proposition has repeatedly been rejected by the Supreme Court and Circuit Courts of Appeal. *See, e.g., Marcello v. Bonds,* 349 U.S. at 311, 75 S.Ct. 757 ("[t]he ... contention that because the officer is under the supervision of Immigration and Naturalization Service officers who perform prosecuting and investigative functions, due process may be violated, is ... without merit"); *United States v. Garcia–Martinez,* 228 F.3d 956, 960–64 (9th Cir.2000) (finding no due process violation in expedited removal proceedings where alien challenged procedure on the basis that special inquiry officer was inherently biased because he served as an INS enforcement employee); *United States v. Benitez–Villafuerte,* 186 F.3d at 659 (finding allegation that the INS impermissibly functioned in prosecutorial and adjudicative capacity was "wholly devoid of merit"). To the contrary, a hearing officer is presumed to be fair. *See Schweiker v. McClure,* 456 U.S. 188, 195, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982) (in applying the *Mathews* factors, starting from the presumption that hearing officer serving in quasi-judicial capacity is presumed to be fair and finding no disqualifying interest to show bias on the part of the hearing officers); *Withrow v. Larkin,* 421 U.S. at 35, 95 S.Ct. 1456 ("The contention that the combination of investigative and adjudicative functions

---

7. In *Benitez–Villafuerte,* the Fifth Circuit further rejected petitioner's charge of bias based on the INS's purported pecuniary interest in petitioner's deportation and held that, while the INS's funding may depend on its workload in apprehending and deporting aliens, that connection is too tenuous to support an inference of bias, noting that the alleged interest was the type the Supreme Court had

called "so remote, trifling and insignificant that it may fairly be supposed to be incapable of affecting the judgment or of influencing the conduct of an individual INS hearing officer." *Benitez–Villafuerte,* 186 F.3d at 660 (citing *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 827, n. 3, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986)) (internal quotation marks omitted).

necessarily creates an unconstitutional risk of bias in administrative adjudication ... must overcome a presumption of honesty and integrity in those serving as adjudicators ...."). Likewise, "the Attorney General's exercise of his broad discretionary power [to release unadmitted aliens under 8 U.S.C. § 1182(d)(5) ] must be viewed at the outset as presumptively legitimate and bona fide in the absence of strong proof to the contrary." *Bertrand v. Sava*, 684 F.2d at 212–13.

In light of the Supreme Court's mandate to presume fairness on the part both of the agency and of the hearing officer, and in the absence of any particularized showing of bias on the part of the Acting District Director who determined Ferreras' application, the Court finds that Ferreras has failed to demonstrate that the INS violated his due process rights when the District Director, as opposed to an Immigration Judge, ruled on his request for release pending termination of the deportation proceedings.

## CONCLUSION

Ferreras has failed to demonstrate that his detention by the INS violates his rights under the Constitution of the United States. Therefore, whether or not the Court would have reached conclusions different from those reached by the INS regarding the propriety of his release from detention, there is no basis for judicial interference with the discretionary determination made by the INS in this case pursuant to its statutory authority. Accordingly, the petition for a writ of habeas corpus is denied and the stay of deportation previously entered by the Court is vacated.

SO ORDERED.