Edward MEJIA, Petitioner,

v.

John ASHCROFT, Attorney General; Tom Ridge, Secretary of the Department of Homeland Security; Michael Garcia, Director United States Immigration and Customs Enforcement; Greg Kendrick, Newark Field Office Director, United States Immigration and Customs Enforcement; U.S. Immigration & Customs Enforcement; Oscar Avilas, Acting Director, Hudson County Correctional Center, Respondents.

No. 05–CV–0494(WJM).

United States District Court, D. New Jersey.

March 14, 2005.

Thomas E. Mosely, Newark, for Petitioner Edward Mejia.

Caroline A. Sadlowski, Assistant U.S. Attorney, Office of the U.S. Attorney, Newark, for Respondents.

## OPINION

MARTINI, District Judge.

This matter comes before the Court on Edward Mejia's ("Petitioner") petition for writ of habeas corpus under 28 U.S.C. § 2241 (2000). Petitioner, an alien, is currently being detained by the United States Immigration and Customs Enforcement ("USI&CE") under 8 U.S.C. § 1225(b)(2)(A) (2000) pending removal. Petitioner contends that: (1) he should not be mandatorily detained under 8 U.S.C. § 1226(c)(1) (2000) because that detention provision was not intended to apply to aliens who, like him, served no jail time after October 8, 1988; (2) if he is being detained under § 1225(b)(2)(A), his detention without an individualized bond hearing before a neutral adjudicator (an Immigration Judge) violates the Due Process Clause and the equal protection component of the Fifth Amendment; and (3) to the extent that his detention without an individualized bond hearing before a neutral adjudicator is the result of government regulation and not of statute, these regulations are *ultra vires.* (*See generally* Brief in Support of Petitioner's Application dated January 26, 2005 [*hereinafter* "Pet.'s Br."].) Petitioner seeks, among other relief, a bond hearing before an Immigration Judge.

For the reasons set forth below, the petition is **DISMISSED** and the relief requested therein is **DENIED.**

### *FACTUAL AND PROCEDURAL BACKGROUND*

Petitioner, a citizen of the Dominican Republic, first entered the United States on or about February 1989 without inspection. Soon thereafter, in November 1989, he was issued an Order to Show Cause charging him with being deportable under Section 241(a)(2) of the Immigration and Nationality Act as an alien who had entered the United States without inspection. After being released on bond, Petitioner (who at the time was using the alias Andres Beltre) failed to appear for his deportation hearing and was ordered deported *in abstentia* in January 1990. A notice of his deportability was sent via certified mail to his parole address.

In January 1992, Petitioner (apparently having never departed the United States despite the order of deportation) was convicted in a New Hampshire Superior Court of one count of Possession of a Controlled Drug with Intent to Sell Cocaine and two counts of Illegal Sale of a Controlled Narcotic Drug.

In February 1994, Petitioner was admitted into the United States under his own name, Edward Mejia. His immigrant visa application, however, failed to disclose his prior convictions and instead stated that he had never before been arrested or convicted. It also failed to disclose his prior use of the alias "Andres Beltre" and instead stated in the application that he had never been know by any other name. Nevertheless, Petitioner's application was approved and he enjoyed lawful permanent resident ("LPR") status from February 1994 forward.

On December 20, 2004, Petitioner was (based on the above facts) detained upon his return from a brief trip to the Dominican Republic by the USI&CE at Newark Airport pursuant to 8 U.S.C. § 1225(b)(2)(A), reclassified as an "alien seeking admission" under 8 U.S.C. § 1101(a)(13) (2000), and thereby stripped

of his LPR status. At that time Petitioner was also served with a Notice to Appear ("NTA") commencing removal proceedings. The NTA charges Petitioner with being an inadmissible arriving alien under 8 U.S.C. §§ 1182(a)(2)(A)(i)(II), (a)(2)(C), (a)(6)(C)(I), and (a)(7)(A)(i)(I) based on his prior convictions, his prior fraudulent procurement of admission, and his lack of valid entry documents.

Petitioner appeared before an Immigration Judge on January 10, 2005 and the proceeding was adjourned to February 7, 2005, at which time his motion to terminate the immigration proceedings (which was based in part on his argument that § 1101(a)(13)(C)(v) should not operate to reclassify him as an alien seeking admission) was denied. In addition, by letter dated February 28, 2005, the USI&CE denied Petitioner's February 7, 2005 application for parole. The letter indicated that "[b]ased on the evidence submitted and the fact that Mr. Mejia's presence in the United States for nearly ten years was possible solely as the result of fraud and misrepresentation, it does no appear that there are urgent humanitarian concerns or public interest reasons sufficient to warrant a favorable decision." Finally, on March 7, 2005 the Immigration Judge denied Petitioner's application under 8 U.S.C. § 1182(c) for a waiver of inadmissibility as well as his applications for cancellation of removal under §§ 1229A(a) and (b)(1). Thus, removal proceedings remain pending and Petitioner remains detained without opportunity for release on bond.

This Court issued an Order to Show Cause on January 26, 2005 directing the government to appear on February 10, 2005 and show cause why a writ of habeas corpus should not issue declaring Petitioner's imprisonment unlawful. Oral argument was held on February 14, 2005 and again on March 8, 2005.

## ANALYSIS

### I. The Relevant Legal Framework

The statutory framework governing Petitioner's detention has already been discussed in *Tineo v. Ashcroft*, 350 F.3d 382 (3d Cir.2003). Petitioner's mandatory detention with the opportunity for bond only if he qualifies for parole follows from the application of 8 U.S.C. §§ 1101(a)(13)(C), 1182(d)(5)(A), and 1225(b)(2)(A).

Section 1101(a)(13) provides, in relevant part:

(A) The terms "admission" and "admitted" mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.

\* \* \* \* \* \*

(C) An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien—

(i) has abandoned or relinquished that status,

(ii) has been absent from the United States for a continuous period in excess of 180 days,

(iii) has engaged in illegal activity after having departed the United States,

(iv) has departed from the United States while under legal process seeking removal of the alien from the United States, including removal proceedings under this chapter and extradition proceedings,

(v) has committed an offense identified in section 1182(a)(2) of this title, unless since such offense the alien has been granted relief under section 1182(h) or 1229b(a) of this title, or

(vi) is attempting to enter at a time or place other than as designated by immigration officers or has not been admitted to the United States after inspection and authorization by an immigration officer.

8 U.S.C. § 1101(a)(13). Under § 1101(a)(13)(C), returning LPRs are presumptively entitled to retain that status upon reentry unless he falls into one of the six subsections, in which case "he is stripped of his lawful permanent residence. That is, he becomes an alien seeking admission as if he were entering for the first time." *Tineo*, 350 F.3d at 386. Petitioner has been stripped of his LPR status and is now deemed an alien seeking admission under subsection (v) as an alien who has committed an offense identified in § 1182(a)(2).

As an alien deemed to be seeking admission, Petitioner is being detained under § 1225(b)(2)(A), which provides:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a [removal] proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added). Although § 1225(b)(2)(A) carves out certain exceptions, none of them apply here.

As the Third Circuit has noted, "[t]he grounds for release [of an alien deemed to be seeking admission and detained under § 1225(b)(2)(A)] pending conclusion of the removal proceedings are extremely narrow." *Tineo*, 350 F.3d at 387. Specifically, § 1182 provides that "[t]he Attorney General may ... in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for *urgent human-*

*itarian reasons* or *significant public benefit* any alien applying for admission to the United States ...." 8 U.S.C. § 1182(d)(5)(A) (emphasis added).

Thus, because § 1225(b)(2)(A) requires the government to detain aliens seeking admission who are "not clearly and beyond a doubt entitled to be admitted" and because of the limited grounds for parole in § 1182(d)(5)(A), in practice and in this case "these provisions... result in the mandatory detention of returning [LPRs] at places of inspection." *Tineo*, 350 F.3d at 387.

## II. Petitioner's Statutory Challenge

Petitioner argued in his opening brief that he should not be mandatorily detained under § 1226(c)(1) because his convictions pre-date the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Pub. L. No. 104–208, 110 Stat. 3009–546 (1996). (*See* Pet.'s Br. at 8–10.) The Court need not address this argument, as Petitioner is being detained under § 1225(b)(2)(A), not § 1226(c)(1).

## III. Petitioner's Due Process Challenge

Petitioner argues that his Fifth Amendment due process rights are violated by his mandatory detention because: (1) § 1225(b)(2)(A) does not expressly require his *mandatory* detention, (Pet.'s Br. at 11–12); (2) he has no opportunity for a bond hearing before a neutral adjudicator, (*id.* at 12–17); and (3) denying him an opportunity for bond is not narrowly tailored to serve any compelling state interest, (*id.* at 17–18).

■ Petitioner's first argument is easily disposed of, as it ignores the fact that Petitioner has been reclassified as an alien seeking admission by operation of § 1101(a)(13)(C)(v) and that, as such, he is eligible to be released on bond only if he

first qualifies for parole under § 1182(d)(5)(A). As *Tineo* makes clear, the application of §§ 1101(a)(13)(C), 1182(d)(5)(A), and 1225(b)(2)(A) results in the *mandatory* detention of returning LPRs at places of inspection. *Tineo,* 350 F.3d at 387.

Petitioner's second and third due process arguments are disposed of by the Supreme Court's opinion in *Demore v. Kim,* 538 U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003). In *Kim,* the Court addressed the constitutionality of a similar provision, 8 U.S.C. § 1226(c), that provides for the mandatory detention (without a bond hearing) of certain criminal LPRs charged with being deportable. The petitioner in *Kim* argued "not that the Government may not detain LPRs to ensure their appearance at removal hearings, but that due process under the Fifth Amendment conditions a potentially lengthy detention on a hearing and an impartial decisionmaker's finding that detention is necessary to a governmental purpose." *Kim,* 538 U.S. at 548–49, 123 S.Ct. 1708 (Souter, J., concurring in part and dissenting in part). As Justice Souter pointed out, "Kim has never challenged the INS's general power to detain aliens in removal proceedings or even its power to detain him in particular, if it affords him a chance to participate in an enquiry whether he poses a flight risk or a danger to society." *Id.* at 559, 123 S.Ct. 1708 (Souter, J., concurring in part and dissenting in part). Rejecting the petitioner's due process arguments, the Court stated that "when the government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.* at 528, 123 S.Ct. 1708. It then went on to hold that mandatory detention without a bail hearing during removal proceedings is "a constitutionally permissible part" of the removal process, citing the important governmental objectives of preventing flight during removal proceedings and of ensuring removal if so ordered. *Id.* at 531, 123 S.Ct. 1708.

■ Although *Kim* did not involve mandatory detention as a result of the applicability of §§ 1101(a)(13)(C), 1182(d)(5)(A), and 1225(b)(2)(A), the Court finds that its holding is equally applicable in this case, despite Petitioner's arguments to the contrary. (*See* Petitioner's Reply Letter Brief at 9–13.) Indeed, that mandatory detention without a bond hearing imposed by operation of these provisions, like the mandatory detention under § 1226(c) discussed in *Kim,* does not raise due process concerns has been forecasted (even if not decided) by the Third Circuit's decision in *Tineo:* "*Kim* casts substantial doubt on the viability of a due process challenge to [the mandatory detention of unparoled aliens without a bail hearing under 8 U.S.C. §§ 1101(a)(13)(C), 1182(d)(5)(A), and 1225(b)(2)(A)]." *Tineo,* 350 F.3d at 399 n. 12; *see also Ferreras v. Ashcroft,* 160 F.Supp.2d 617, 627–33 (S.D.N.Y.2001) (finding no due process violation in mandatory detention pursuant to these same provisions).[1]

For these reasons, the Court finds that Petitioner's Fifth Amendment due process

---

1. In concluding that *Kim* disposes of Petitioner's due process claims, the Court points out that it bases its conclusion on the fact (conceded by the government) that Petitioner has a right to a hearing to determine whether he is properly classified under § 1101(a)(13)(C)(v) as an alien seeking admission. (*See* Government's Response to Petitioner for Writ of Habeas Corpus at 10 ("In the instant..., Petitioner retains the right to such a hearing.... If Petitioner is successful at such a hearing, he will be instantly eligible for bond proceedings before an Immigration Judge."); Reply Declaration of Thomas E. Moseley ¶¶4–5.)

rights are not offended by his mandatory detention.

## IV. Petitioner's Equal Protection Challenge

 As discussed *supra*, the Third Circuit has construed § 1101(a)(13)(C) as providing that *returning* LPRs who fall into one of the six subsections of the statutory provision are stripped of their LPR status and treated as aliens seeking admission "as if [they] were entering for the first time." *Tineo*, 350 F.3d at 387. In this case, Petitioner is being stripped of his LPR status and regarded as an alien seeking admission because of his 1992 drug-related convictions. Petitioner argues that the application of § 1101(a)(13)(C)(v) based solely on the fortuitous fact of his temporary departure from and return to the United States violates the equal protection component of his Fifth Amendment Due Process rights. (*See* Pet.'s Br. at 18–19.)[2]

 The Constitution provides equal protection guarantees to aliens such as Petitioner as well as to citizens. *DeSousa v. Reno*, 190 F.3d 175, 184 (3d Cir.1999). But as Petitioner has conceded, "disparate treatment of different groups of aliens triggers only rational basis review under equal protection doctrine." *Id.*; (Pet.'s Br. at 18–19; Transcript of March 8, 2005 Hearing at 12–13). Legislation survives rational basis review if there is a rational relationship between the disparate treatment and some legitimate governmental purpose. *Heller v. Doe*, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). Courts applying this minimal scrutiny must be mindful of the fact that rational basis review does not empower "courts to judge the wisdom, fairness, or logic of legislative choices," and legislation subject to rational basis review has a strong presumption of validity. *Id.* at 319, 113 S.Ct. 2637 (quoting *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)). Moreover, Congress need not justify the purpose or reasoning to support its classification: the legislation must be sustained if any *reasonably conceivable* state of facts provide a rational basis for the classification. *Id.* at 320, 113 S.Ct. 2096.

At oral argument the government proffered numerous justifications for the disparate treatment of returning and non-returning LPRs under § 1101(a)(13)(C)(v): (1) it is common for Congress to classify aliens based on departure; (2) it is common for Congress to accord different rights to aliens apprehended at the border compared to aliens apprehended within our borders; (3) one of the functions of immigration law is to monitor the comings and goings of aliens at the border; and (4) this distinction is consistent with the immigration laws' systematic attempt to deny immigration status to certain criminal aliens. (*See* Transcript of March 8, 2005

---

**2.** That aliens stripped of their LPR status and reclassified as "aliens seeking admission" under § 1101(a)(13)(C) ultimately are ineligible for bond without first having to qualify for parole under § 1182(d)(5)(A) even though LPRs not so reclassified *are* eligible for the hearing without first having to qualify for parole does not raise equal protection concerns, as these two classes of aliens are not similarly situated. *See Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) (stating that equal protection "does not require things which are different in fact or opinion to be treated in law as though they were the same"). *Cf. Jankowski–Burczyk v. INS*, 291 F.3d 172, 176 (2d Cir.2002) ("LPRs and non-LPRs (classifications defined by their mutual exclusion) are therefore not 'similarly situated' as to the INA. Congress may enact a regulatory measure as to one classification without a counterpart measure as to the other, and without a rationale for the resulting lack of symmetry.")

Hearing at 22, 24, 26.) Although the Court is challenged to conclude that there is any rational relationship between *these* justifications and the disparate treatment of returning and non-returning LPRs under § 1101(a)(13)(C)(v), the Court nevertheless finds that there is *some conceivable state of facts* that provide a rational basis for the classification. Specifically, the Court finds that deterring the return of departed aliens who have committed an offense identified in § 1182(a)(2) and who are, therefore, removable is a legitimate government interest. Congress may well have concluded that by providing unique disincentives for departed criminal aliens to attempt return it would thereby ease the burden imposed on the already scarce resources devoted to apprehending and excluding inadmissible aliens attempting to cross our borders. *Accord Mendez de Leon v. Reno,* No. C 97–02482, 1998 WL 289321, at *11–*12 (N.D.Cal. Mar. 26, 1998) (stating, in response to argument that 8 U.S.C. § 1231(a)(5) violates the Equal Protection Clause because it treats those who are ordered removed and who leave the United States less favorably than those who are ordered removed but who remain in the United States, that "Congress appears to have been motivated by concerns about illegal border crossings" and that "Congress could rationally have concluded that illegal reentry was a greater immigration problem and thus required greater deterrence").

The Court finds, moreover, that § 1101(a)(13)(C)(v) is rationally related to this legitimate government interest because it provides a disincentive for these departed criminal aliens to attempt reentry by treating them less favorably than aliens who have not departed (specifically, by stripping them of any LPR status they might previously have enjoyed and by reclassifying them as aliens seeking admission). Although this disparate treatment could conceivably have the additional (and most likely unintended) effect of deterring certain criminal LPRs from departing the United States in the first place, this does not, in the Court's opinion, detract from the rational relationship between the classification and the government's legitimate interest.

For these reasons, the Court concludes that the disparate treatment of returning and non-returning LPRs under § 1101(a)(13)(C)(v) does not violate the equal protection component of the Fifth Amendment.

## V. Petitioner's *Ultra Vires* Challenge

Petitioner argues that his detention without a bond hearing is the result of *ultra vires* government regulations, not of statute. This challenge is without merit. As discussed *supra,* Tineo makes clear Petitioner's mandatory detention without bond is the result of the application of §§ 1101(a)(13)(C), 1182(d)(5)(A), and 1225(b)(2)(A). Nevertheless, to the extent that it is the result of agency interpretation of these statutes, it is clear that the agency interpretation is entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

■ Under *Chevron,* if "Congress has directly spoken to the precise question at issue," courts, as well as the agency, "must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S.Ct. 2778. In this case, § 1225(b)(2)(A) does not expressly deny LPRs treated as aliens "seeking admission" the opportunity to be bonded without first having to qualify for parole. Nevertheless, even if the Court were to assume that the statute is ambiguous regarding Petitioner's eligibility for release on bond, the agency's inter-

pretation must be "given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 843–44, 104 S.Ct. 2778. In this case, the Court does not find arbitrary, capricious, or manifestly contrary to the statute the government's conclusion that §§ 1101(a)(13)(C), 1182(d)(5)(A), and 1225(b)(2)(A) taken together impose mandatory detention without opportunity for bond of unparoled aliens seeking admission. Indeed, this is how the Third Circuit has construed these statutory provisions. *See Tineo*, 350 F.3d at 387.

### *CONCLUSION*

Based on the foregoing, Edward Mejia's petition for writ of habeas corpus is hereby **DISMISSED** and the relief requested therein is **DENIED.**

An accompanying Order is attached.

### ORDER

Petitioner, Edward Mejia ("Petitioner") having filed a Petition for Writ of Habeas Corpus and request for declaratory and injunctive relief, and Respondents having opposed the Petition, and the Court having considered the submissions of the parties and for good cause shown;

It is on this 14th day of March, 2005

**ORDERED** that Petitioner's Petition for Writ of Habeas Corpus is **DISMISSED;** and it is further

**ORDERED** that in so far as Petitioner's request is for declaratory and injunctive relief, said request is **DENIED;** and it is further

**ORDERED** that for all purposes, this will serve as the final Order dismissing all of Petitioner's claims in the above matter.